**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Respondent | § | |
| | § | Crim. No. 4:18-CR-721 |
| v. | § | Civ. No. 4:22-CV-3231 |
| | § | |
| | § | |
| MICHAEL HSU, | § | |
| Movant | § | |

## UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S 28 U.S.C. § 2255 MOTION

The United States respectfully requests that this Court deny the 28 U.S.C. § 2255 motion filed by Michael Hsu. Hsu claims he received ineffective assistance of counsel during his plea and at his sentencing hearing. The claims are conclusory, contradicted by the record, and meritless.

I.   **Procedural History**

a.   **Underlying Criminal Conduct and Indictment**

Hsu was a drug dealer trafficking methamphetamine and cocaine in Houston, Texas (PSR ¶ 29).[1] During a Drug Enforcement Agency

---

[1] "Dkt." citations are to those filings under Crim. No. 4:18-CR-72. "Civ. Dkt." citations are to those filings under Civ. No. 4:22-CV-3231. The re-arraignment transcript is cited as "R.", the sentencing transcript is cited as "S.", and the amended Presentence Investigation Report is cited as "PSR".

investigation, Hsu participated in controlled purchases of methamphetamine hydrochloride (actual) on July 27, 2016, and of d-methamphetamine hydrochloride on August 31, 2016 (PSR ¶ 29). He was present during the seizure of cocaine and d-methamphetamine hydrochloride on October 6, 2016, as well as methamphetamine hydrochloride (actual) and d-methamphetamine hydrochloride on October 26, 2016 (PSR ¶ 29).[2]

The Grand Jury charged Hsu, along with 19 co-defendants, in a 32-count indictment, with, *inter alia*, conspiracy to possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2 (Dkt. 43). Hsu was named in counts one through four as well as counts six through eight (Dkt. 43).

### b.    Re-arraignment

Hsu appeared before this Court on May 22, 2019, to enter a plea of guilty to count one of the indictment (R. 1; 4). Hsu agreed to tell the truth and understood that lying under oath was a crime (R. 5). He indicated

---

[2] A full recitation of Hsu's criminal conduct can be found in the PSR (PSR ¶¶ 8-28).

that he had enough time to discuss his case with his attorney and did not have to ask his attorney any questions before proceeding (R. 10). Hsu confirmed he was satisfied with his attorney's representation (R. 10).

Defense counsel stated he had enough time to investigate the case and that Hsu was able to assist with his defense (R. 11). Defense counsel informed this Court he was "fully satisfied" that Hsu understood the charges against him as well as his sentencing exposure and was competent to enter a plea (R. 11).

This Court began by reviewing the rights that Hsu was waiving by pleading guilty: the right to a jury trial, the right to an attorney, the right to have the case proven beyond a reasonable doubt, the right to be presumed innocent, the right to confront the government's witnesses, the right to present defense witnesses, and the right to testify or remain silent (R. 11-14). Hsu indicated he wished to waive these rights (R. 11-15). He also confirmed he understood that he was waiving certain arguments by pleading guilty (R. 15).

Hsu indicated that he received the indictment and reviewed it with his attorney (R. 15-16). Hsu confirmed he understood the charge against him (R. 19). This Court explained the elements of the offense, namely

that the government had to prove Hsu "knowingly conspired to possess a controlled substance… that the substance was in fact a controlled substance…that [Hsu] possessed the controlled substance with the intent to distribute it; and…that the quantity of the substance containing methamphetamine was at least 50 grams or more or 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine" (R. 19). Hsu confirmed he understood (R. 20).

This Court explained Hsu's sentencing exposure, a term of incarceration of ten years to life (R. 20). This Court highlighted the fact that Hsu's criminal history and the quantity of drugs would impact the length of the sentence (R. 22).[3] Hsu stated he understood (R. 22). Hsu then confirmed that he discussed the sentencing guidelines with his attorney (R. 23). This Court emphasized that, "no matter what" defense counsel had indicated about "the advisory guidelines and how they might apply" as well as any indication as to what the "sentence might be in this range," any discussions were not "a promise or a guarantee of any

---

[3] In fact, the written plea agreement made clear that the government could provide all its files to the Probation Office regarding Hsu's criminal conduct to assist the Probation Office in the creation of the PSR (Dkt. 209, p. 7 - ¶ 12(a)).

kind…about the sentence in this case" (R. 23). Hsu confirmed he understood (R. 23).[4]

This Court then reviewed the contents of Hsu's written plea agreement (R. 23-24). The government agreed to dismiss any remaining counts of the indictment, would not oppose a request for an additional one level departure based on the timeliness of the plea, and would not oppose a sentence at the low end of the range (R. 24). In exchange, Hsu agreed to a "standard appeal waiver" (R. 24; *see also* Dkt. 209, p. 5-6). Hsu confirmed that he understood the terms of the agreement, that he had reviewed the written agreement, and had discussed it with defense counsel (R. 25).

This Court emphasized that the plea agreement "does not bind…or restrict" this Court "in any way" as to determining Hsu's sentence (R. 25). This Court noted that Hsu was waiving his right to appeal without knowing the length of his sentence (R. 26). This Court further explained that Hsu could not challenge his sentence in a higher court because of the waiver (R. 26).[5] Hsu confirmed he understood (R. 26).

---

[4] This was also made explicit in Hsu's written plea agreement (Dkt. 209, p. 5-6 - ¶ 8, p. 8 ¶ 13).

[5] This was also described in the written plea agreement (Dkt. 209, p. 5-6 - ¶ 8).

This Court discussed the sentencing procedure (R. 27-29). Hsu confirmed that he understood that his minimum sentence was ten years' incarceration and his maximum sentence was life imprisonment (R. 29-30). This Court explained that the sentencing guidelines were advisory (R. 30). Hsu confirmed that he understood he could not withdraw his guilty plea if he was dissatisfied with his sentence (R. 30-31).

The government then explained the facts that it intended to prove at trial (R. 34-35). The government would prove:

> On or about July 27th, 2016, [Hsu] conspired with his codefendant to possess and distribute 1 kilogram of methamphetamine. Specifically, while at his apartment in Houston, Texas, the defendant supplied his codefendant with a kilogram of methamphetamine with the understanding that the codefendant would in turn be providing that kilogram of methamphetamine to another person. The other person was, in fact, a DEA confidential source. And after obtaining the narcotics from the codefendant, provided it to the DEA.
>
> Subsequent DEA analysis confirmed that the narcotics provided by the defendant to his codefendant and then in turn to the confidential source was methamphetamine hydrochloride with a pure weight of 958.9 grams.

(R. 35). Hsu stated these facts were true and entered a plea of guilty (R. 36). He confirmed that he entered that plea freely as well as voluntarily, no one forced or threatened him to plead guilty, and that no one promised

6

him anything beyond his plea agreement in exchange for entering a plea of guilty (R. 36).

This Court found that Hsu "is clearly mentally competent and capable of entering an informed plea…[and] the plea is supported by independent facts establishing all of the elements of the offense" (R. 37). This Court ruled that Hsu's "plea of guilty is voluntarily, freely, and knowingly made" and that Hsu "understands the nature of these proceedings and the consequences of his plea of guilty and that this is an informed plea" (R. 37). Hsu signed the plea agreement in open court (R. 38-40). Hsu stated he had discussed the agreement with his attorney (R. 39-40).

### c.    PSR and Objections

Prior to sentencing, the Probation Department generated a PSR. Probation held Hsu responsible for 995.2 grams of cocaine, 1259.9 grams of methamphetamine hydrochloride (actual), and 2733 grams of d-methamphetamine hydrochloride (ICE) (PSR 29). Applying the Guidelines rules for combining different controlled substances resulted in a converted drug weight of 80,273.6 kilograms (PSR 29).

As Hsu was responsible for between 30,000 kilograms and 90,000 kilograms of converted drug weight, Probation assessed his base level offense as 36 (PSR 36). Probation increased his base level offense by two, stating that Hsu was "an organizer, leader, manager or supervisor" and that a two-level increase was based on "a conservative estimate of his role" (PSR 39). Hsu's adjusted offense level was 38 (PSR 41). After a three-level decrease for acceptance of responsibility (PSR 43), Probation calculated the total offense level as 35 (PSR 44).

Probation recounted Hsu's prior convictions (PSR 46-56). His criminal history score was 10, placing him in criminal history category V (PSR 57, 59). Based on a total offense level of 35 and a criminal history category of V, Hsu's guideline range was 262 to 327 months' incarceration (PSR 86).

Defense counsel objected to the PSR, arguing that Hsu was eligible for the safety valve reduction (Dkt. 565). The government responded that Hsu was ineligible for the safety valve because he was an organizer and leader of the conspiracy and also was ineligible because of his criminal history (Dkt. 556). In pertinent part, as to his status as a leader, the government noted that a confidential informant paid a $3,000

"introduction fee" to a co-defendant for the co-defendant to introduce the confidential informant to Hsu (Dkt. 556, p. 2; *see also* PSR ¶ 15).

### d.    Sentencing and Judgment

Hsu appeared before this Court, electronically, on September 29, 2021 (S. 1). Defense counsel began by noting that he objected to the PSR because it reflected that Hsu was not eligible for the safety valve and objected to the Probation Office's determination that Hsu was an organizer or leader of the conspiracy (S. 4). Defense counsel argued that Hsu should not be a leader or organizer of the conspiracy because the facts demonstrated that he was merely buying and selling drugs (S. 5-6; *see also* S. 8-9). The government responded that Hsu was an organizer or leader because he had multiple sources of drugs and was supplying drugs to co-defendants to deal (S. 6-8). The government also highlighted that a co-defendant, after selling drugs to a confidential informant, was "paid $3,000 to do an introduction to the defendant" (S. 7; *see also* S.9 ["When you're paying somebody a $3,000 introduction fee to go up the chain, that, to us, is a supervisory role"]). This Court ruled that Hsu did have a supervisory role in the conspiracy (S. 9).

This Court overruled Hsu's objections and found that the "total offense level is 35 with a criminal history category of five, which yields a recommended period of time of imprisonment under the advisory guidelines of 262 to 327 months" (S. 10). The government filed a 5k motion, reducing the low end of Hsu's sentence by 15 percent, to 222 months' incarceration (S. 10). Defense counsel requested the Court sentence defendant as if he had not been assessed a two-level increase for being a leader/organizer of the conspiracy (S. 10-12). The government argued that Hsu should be sentenced to 222 months' incarceration (S. 13-14). Hsu apologized for his criminal conduct (S. 14).

This Court sentenced Hsu to 222 months' incarceration (S. 16). Judgment was entered on October 6, 2021 (Dkt. 600).

### e.    The Instant Petition

Hsu argues that his plea was involuntary due to ineffective assistance of counsel (Dkt. 768, p. 4; Dkt. 769, p. 1-2, 5-9).[6] Specifically, he states that defense counsel "misadvised [him] as to the consequences of plea" by failing to explain that "the Presentence Investigation Report

---

[6] Hsu supplied two copies of page 9 in his filing. Under the ECF header, those two pages appear as (Dkt. 769, p. 9) and (Dkt. 769, p. 10).

could change the outcome of his sentence" (Dkt. 769, p. 1-2; *see also* p. 5). That is, defense counsel did not explain "relevant conduct…and how it applies to his…sentence" (Dkt. 769, p. 9). Additionally, Hsu argues his plea was involuntary because defense counsel underestimated Hsu's sentencing exposure (Dkt. 769, p. 6-8). Hsu also claims defense counsel did not explain that if he waived his right to appeal then he could not challenge sentencing enhancements on appeal (Dkt. 769, p. 9; *see also* p. 5). Instead, "[w]ithout any explanation…[c]ounsel said [he] should plea guilty" (Dkt. 769, p. 9). Hsu claims that he was prejudiced by these failings as he would not have pled guilty but proceeded to trial had defense counsel provided this information (Dkt. 769, p. 8-9).

Hsu also claims that defense counsel was ineffective at sentencing (Dkt. 769). He claims that defense counsel did not provide Hsu with adequate time to review the PSR and did not review the PSR with Hsu before sentencing (Dkt. 769, p. 2, 5). Additionally, Hsu claims that defense counsel was not prepared for sentencing and failed to correct a misstatement on the record (Dkt. 769, p. 2, 5, 6). Specifically, Hsu alleges that the government stated that Hsu paid the $3,000 "introduction fee" to a co-defendant when the confidential source actually paid the fee (Dkt.

769, p. 2). Finally, Hsu argues that defense counsel was ineffective for failing to move for a downward variance based on the discrepancy between the Guideline treatment of methamphetamine mixture, methamphetamine actual, and ice (Dkt. 769, p. 5, 11-12; Civ. Dkt. 3).

## II.   Defendant's ineffective assistance of counsel claims should be denied as conclusory, contradicted by the records, or otherwise meritless.

### a.   The Standard for Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984). To successfully state a claim of ineffective assistance of counsel, Hsu must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced his defense. *See id.* at 687. A failure to establish either prong of the *Strickland* test requires a finding that defense counsel's performance was constitutionally effective. *See id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The

reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96. To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice").

**b.    Hsu's claims that defense counsel was ineffective during re-arraignment should be denied.**

Hsu claims that his plea was involuntary due to ineffective assistance of counsel. Hsu asserts that defense counsel (1) failed to explain that the PSR's determination of his relevant conduct and eligibility for enhancements could impact his sentence, (2) underestimated his sentencing exposure, and (3) failed to explain that he could not challenge his sentencing enhancements on appeal if he waived his right to appeal. These claims are contradicted by the record and meritless.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson,* 226 F.3d 399, 404 (5th Cir.2000). To be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence." *See Boykin v. Alabama,* 395 U.S. 238, 244 (1969). The defendant need only understand the direct consequences of the plea; he need not be made aware every consequence that, absent a plea of guilty, would not otherwise occur. *See Trujillo v. United States,* 377 F.2d 266, 266 (5th Cir.), *cert. denied,* 389 U.S. 899 (1967). Courts considering challenges to the validity of a guilty plea "have focused on three core

14

concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *United States v. Garcia*, 983 F.2d 625, at 627–28 (5th Cir. 1993).

In evaluating whether Hsu's plea was voluntary, this Court should give great weight to Hsu's statements during the plea colloquy. *See Blackledge v. Allison*, 431 U.S. 63, 73 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002); *see also United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994) (placing great weight on defendant's statements during plea). Defendants "ordinarily will not be heard to refute [their] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

Hsu's claims are contradicted by the record. The record demonstrates that Hsu was completely aware of his sentencing exposure and the consequences of his plea. During his plea, Hsu swore to tell the truth (R. 5). He indicated he had enough time to discuss his case with his attorney and did not have to ask his attorney any questions before proceeding (R. 10). Hsu confirmed he was satisfied with his attorney's representation (R. 10). Defense counsel stated he was "fully satisfied"

15

that Hsu understood his sentencing exposure (R. 11). As to his exposure, Hsu repeatedly confirmed his understanding of his minimum and maximum sentencing exposure (R. 20, 29-30). As to the PSR, this Court informed Hsu that his criminal history and the quantity of drugs would impact the length of the sentence (R. 22). Indeed, this Court's thorough explanation of the sentencing process (S. 28-31) belies any notion that Hsu did not understand the consequences of his plea.

Hsu's claim that defense counsel underestimated his sentencing exposure is also meritless since Hsu cannot establish prejudice. Hsu was completely aware of his sentencing exposure (R. 20, 29-30). Moreover, this Court ensured Hsu understood that "no matter what" defense counsel had indicated about "the advisory guidelines and how they might apply" as well as any indication as to what the "sentence might be in this range" such discussions were not "a promise or a guarantee of any kind…about the sentence in this case" (R. 23). Hsu confirmed he understood (R. 23). In fact, this Court repeatedly emphasized that it possessed the ultimate authority to decide Hsu's sentence and that it was not bound to follow any recommendation of defense counsel, the government, or the Sentencing Guidelines (R. 22-31). Hsu confirmed no

one promised him anything beyond the express terms of his plea agreement in exchange for entering a plea of guilty (R. 36). Thus, Hsu's claim should be rejected as meritless as this Court ensured that Hsu understood the consequences of his plea.

Finally, Hsu's claim that his plea was involuntary because he was unaware that he could not challenge his sentencing enhancements on appeal if he waived his right to appeal is contradicted by the record. This Court specifically informed Hsu that he was waiving his right to appeal without knowing the length of his sentence (R. 26). This Court further explained that, consequently, Hsu could not later challenge his sentence on appeal (R. 26). Hsu confirmed he understood (R. 26). Thus, Hsu's claim is contradicted by the record and meritless.

### c. Hsu's claims that defense counsel was ineffective at sentencing should be denied.

Hsu claims defense counsel was ineffective for failing to object to a misstatement of fact at sentencing. This claim is refuted by the record and meritless. Hsu also claims that defense counsel was ineffective at sentencing because he did not adequately discus the PSR with Hsu prior to sentencing and did not move for a downward variance based on the discrepancy between methamphetamine mixture and ice or actual

methamphetamine. These claims are conclusory and, otherwise, meritless.

As to the claim that defense counsel failed to object, Hsu must demonstrate that the objection has "merit." *See Ries v. Quarterman*, 522 F.3d 517, 530 (5th Cir. 2008). Defense attorneys are not required to raise "futile" objections. *See United States v. Winters*, 530 F. App'x 390, 398 (5th Cir. 2013);[7] *see also Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite"). When a defendant cannot demonstrate that the objections or arguments "have merit" then his counsel claim should be rejected because defendant has not established that counsel "was deficient…under the first prong" of *Strickland*. *See Ries*, 522 F.3d at 530. Further, the reviewing court could also deny such a claim under *Strickland's* second prong as "the failure to make a meritless objection could not have prejudiced" the defendant. *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009).

---

[7] Although unpublished opinions are not binding on this Court, they may be instructive and persuasive. *United States v. Cluff*, 857 F.3d 292, 299 (5th Cir. 2017).

Hsu argues that defense counsel should have objected to the government's statement that Hsu paid $3,000 to a co-defendant for co-defendant to introduce Hsu to a confidential informant. Yet, the government made no such statement at sentencing. Instead, the government stated that Hsu's co-defendant was paid to introduce the confidential informant to Hsu (S. 7). In context, the government made clear that the confidential informant paid the co-defendant, not Hsu (S. 7). Therefore, there were no grounds for defense counsel to object. Moreover, Hsu cannot demonstrate prejudice. Even if the government's statement was ambiguous, this Court was fully aware that the confidential informant paid a co-defendant the "introduction fee," not Hsu. That information was provided in the PSR and the government's sentencing recommendation (PSR 15; Dkt. 556, p. 2).

Hsu's remaining claims are also conclusory and meritless. A defendant seeking relief under § 2255 "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 102 S. Ct. 1584, 1593 (1982). After a defendant has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that [he] stands fairly and finally

convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citations omitted). While a *pro se* defendant is entitled to liberal construction of his papers, a *pro se* defendant's "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)). These principles apply with equal force to claims of ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

Hsu's claim that counsel failed to discuss the PSR with him is conclusory. Hsu fails to identify how he was prejudiced by this supposed error. Hsu could believe this prejudiced him for multiple reasons, and, therefore, the principle of liberal construction of a *pro se* motion provides no guidance as to why Hsu believes he was prejudiced. Instead, to consider the claim as drafted would require this Court to engage in rank speculation as to the nature of Hsu's claim. Moreover, the fact that defense counsel filed comprehensive briefing in response to the PSR and argued persuasively for objections to the PSR at sentencing demonstrates

that Hsu wouldn't be able to argue that defense counsel's performance at sentencing prejudiced him. Thus, this claim should be denied as conclusory and, otherwise, meritless.

Finally, Hsu claims that counsel should have moved for a downward variance because of the discrepancy between the Sentencing Guideline's treatment of methamphetamine mixture and ice as well as actual methamphetamine. This claim is also conclusory as Hsu fails to articulate why the discrepancy necessitates a downward departure. Under the Sentencing Guidelines, a defendant convicted under 21 U.S.C. § 841(a) is generally sentenced based on the Drug Quantity Table in U.S.S.G. § 2D1.1(c). *See* U.S.S.G. § 2D1.1(a)(5), (c); *United States v. Aparicio*, 963 F.3d 470, 474 (5th Cir.), *cert. denied sub nom. Aparicio-Leon v. United States*, 141 S. Ct. 435 (2020). With methamphetamine, the base offense level is determined by the weight and purity of the controlled substance. *Aparicio*, 963 F.3d at 474. Methamphetamine is considered as "methamphetamine," "methamphetamine (actual)," and "ice" depending on the quality. *See generally* U.S.S.G. § 2D1.1(c). Hsu does not dispute that this Court relied on the accurate converted drug weight in the PSR. Thus, Hsu has not demonstrated that defense counsel was ineffective for

failing to move for a downward variance. Nor has he demonstrated prejudice.

Indeed, the Fifth Circuit has held that the sentencing disparity created by the 10 to one ratio between actual methamphetamine and a substance containing methamphetamine is not irrational or arbitrary and does not violate the Due Process Clause. *Aparicio*, 963 F.3d at 474; *United States v. Molina*, 469 F.3d 408, 413-14 (5th Cir. 2006); *see also United States v. Alcala*, 668 F. App'x 83, 84 (5th Cir. 2016). The Fifth Circuit has rejected the argument that such a discrepancy violates the Equal Protection clause. *United States v. Nunez*, 371 F. App'x 478, 479 (5th Cir. 2010); *see also Chapman v. United States*, 500 U.S. 453, 465 (1991). Therefore, even if counsel had moved for such a downward variance, Hsu has not demonstrated that this would have been successful. His claim, then, should be denied. *See Ortiz-Martinez v. United States*, No. 4:17CR60(1), 2021 WL 5173392, at *3–4 (E.D. Tex. Oct. 4, 2021), *report and recommendation adopted*, No. 4:17-CR-60(1), 2021 WL 5163208 (E.D. Tex. Nov. 5, 2021).[8]

---

[8] The government construes this claim (Dkt. 769, p. 11-12) solely in terms of ineffective assistance of counsel. If this Court believes that Hsu's claim could also be understood as a stand-alone sentencing claim that this Court erred in determining

## III.  **Conclusion**

For the foregoing reasons, the United States respectfully requests that this Court deny Hsu's § 2255 motion without further proceedings. The record conclusively demonstrates that no relief is appropriate; thus, no evidentiary hearing is needed. *See United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983). Because reasonable jurists could not disagree with

---

Hsu's converted drug weight, then that claim would also fail as meritless because this Court properly applied the guidelines.

Moreover, that claim would be barred because Hsu waived the right to challenge his sentence but for ineffective assistance. *See United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002); *United States v. Barnes*, 953 F.3d 383, 386 (5th Cir. 2020). This Court's plea colloquy and the written waiver of the right to appeal demonstrate Hsu validly waived his right to bring such a claim.

The claim would also be procedurally defaulted as Hsu did not raise it on direct appeal. *See United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012). Hsu cannot show cause for failing to bring such a claim on appeal. *See United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). Title 18 U.S.C. § 3742(a) allows defendants to appeal a sentence on the grounds that it was imposed because of an incorrect application of the sentencing guidelines; thus, the legal basis for his sentencing claim was reasonably available to Hsu, as his claim is clearly cognizable on appeal under 18 U.S.C. § 3742(a). Neither could he establish actual prejudice because the claim is meritless. *See United States v. Frady*, 102 S. Ct. 1584, 1596 (1982). Further, Hsu's waiver of the right to appeal does not excuse his procedural default. *See Ramirez v. United States*, CR B:09-424-1, 2014 WL 12695756, at *8 (S.D. Tex. July 16, 2014), *report and recommendation adopted*, CR B-09-424-1, 2014 WL 12696012 (S.D. Tex. Aug. 13, 2014), *aff'd*, 684 Fed. Appx. 369 (5th Cir. 2017).

Finally, such a claim would not be cognizable on collateral review. *See United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). The Fifth Circuit has held that a court's determination of a drug's weight for the purpose of determining the base offense level is a technical application of the guideline. *United States v. Smith*, 170 F.3d 184 (5th Cir. 1999) (relevant conduct finding regarding drug weight was a technical application of the Sentencing Guidelines).

the denial of the § 2255 motion, no certificate of appealability should be issued. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

By: /S/ Kristian D. Amundsen
KRISTIAN D. AMUNDSEN
Assistant United States Attorney
Southern District of Texas Bar No. 3577856
New York State Bar No. 5533831
Attorney for Respondent
1000 Louisiana St., Suite 2300
Houston, TX 77002
(713) 567-9102

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing memorandum was electronically filed with the United States District Court for the Southern District of Texas on January 20, 2023. A true and correct copy of the document was placed in the outgoing mail, for delivery via certified mail, return receipt requested, to the last address of record for movant on January 20, 2023:

Michael Hsu
Reg. No. 78113-479
FCI Beaumont Medium
P.O. Box 26040
Beaumont, TX  77720

/s/ Kristian D. Amundsen
KRISTIAN D. AMUNDSEN
Assistant United States Attorney